I must respectfully dissent. I agree with the proposition of law cited by the majority that one in charge of a dam has a duty to warn persons downstream when flooding may occur; however, the law provides that there is a point at which that duty to warn ends. The majority's holding in this case extends that duty to warn of a dam break further downstream than I feel the law requires; therefore, I do not believe that a jury should be permitted to decide that question, which I think is a matter of law in this case.
Here, it is undisputed that the road crew had no knowledge of Jeffery Avery's being a mile downstream; I do not believe that the law requires the road crew to take measures, under these facts, to ascertain that he was there so that he could be warned.
I recognize that summary judgment is rarely appropriate in a negligence case, but one of the elements of negligence is aduty, and whether the law recognizes a duty is a legal question. I fear that the *Page 290 
majority opinion allows a factfinder to determine a legal question under these facts.
Also, the dam could cause water to back up and flood land above the dam, and there could be damage and possible liability for these damages. The majority's holding would require road crews to steer a course between Scylla and Charybdis. On the one hand, the crews are responsible to the travelling public to make sure that the road will not be affected by the impounded water, and the crews also could be responsible for what has been described as "inverse condemnation" if the water were allowed to flood upper riparian land; yet they cannot break a beaver dam such as this one without first warning persons downstream for an unspecified distance. In a rural, forested area, and under these facts, I do not believe the law does, or should, extend the duty to warn so far. I do not believe the law requires this of the county.
There has to be a reasonable interpretation on the scope of this duty to warn. Certainly, the county is under a duty to warn all persons and landowners that the county knows are downstream, extending as far downstream as the flood waters can reasonably be expected to have an effect. I would also agree that they are under a duty to search for unknown persons downstream (such as hunters) for that distance through which the force of the flood surge could be expected to be too strong to withstand, which in this case was testified to be only 10 to 15 feet. However, to require in this case that a warning be given to an unknown person one mile downstream is unreasonable,[3]
especially since the road crew had no way of knowing that that person would be there and no reasonable way of finding him if they had known. As the majority states, a defendant has a duty to warn foreseeable victims of foreseeable harm, citing Duceyv. United States, 830 F.2d 1071 (9th Cir. 1987). Although foreseeability is usually a fact question, under the facts of this case, I do not believe that it was foreseeable that a hunter in the woods one mile downstream would be in any danger because of the breaking of this beaver dam. Therefore, I must dissent.
STEAGALL, J., concurs.
[3] Of course, a larger dam with more water behind it may pose a threat much farther downstream. In the instance of a major dam break, one mile, or even much more, may be a reasonable distance to require the dam operator to go to warn persons downstream. The reasonableness of the duty to warn must be tied to the facts of the individual case. Here, one mile is unreasonable. Even so, I must point out that the majority opinion does not limit its language to one mile; the opinion seems to make the duty to warn persons downstream absolute and to impose it for an indefinite, and even infinite, distance.